Carl A. Erickson et al., trading as Advance Plastering Company, not Inc., Appellants, v. Michael Levin, trading as A. Levin & Son, et al., Appellees.

### Gen. No. 29,238.

MECHANICS' LIENS—*timeliness of subcontractor's notice and suit against owners and contractor.* In a suit by a subcontractor to establish a mechanic's lien, in which the evidence was conflicting as to when the work was completed, the date claimed by plaintiff bringing the notice to the owners and the beginning of the suit within the statutory period, held that, in view of all the evidence, especially a letter from plaintiff to the owners dated at an earlier date claiming the full contract sum and threatening to place a mechanic's lien on the building, that the trial court was justified in finding that the work was completed at the earlier date and that the proceedings were not within the statutory time as against the owners.

Appeal by plaintiffs from the Municipal Court of Chicago; the Hon. FRANCIS BORRELLI, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1924. Affirmed. Opinion filed February 11, 1925.

EKLUND & ERICKSON, for appellants.

JOSEPH A. SAMUELS, for appellees; FREDERICK MAYER and JACOB BERG, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

On December 21, 1921, the plaintiff, Advance Plastering Company, brought suit against the defendants, Michael Levin, George Silver and Tillie Silver, claiming that it was entitled to a "mechanic's lien" against certain property of George and Tillie Silver for the sum of $435. There was a trial before the court, without a jury, and a judgment entered against the defendant Michael Levin in the sum of $435; and a judgment in favor of the defendants, George Silver and Tillie Silver, against the plaintiff. This appeal is from the latter judgment.

It is admitted that in the early part of 1922 a written contract was made between the defendant Levin and the defendants Silvers whereby Levin agreed to make certain changes in the Silvers' house at 7246 Coles avenue for $4,385; and that on May 6, 1922 the plaintiff entered into a subcontract, in writing, with Levin to do certain parts of the stucco, lath and plaster, carpentry and cement work, for $763.75, upon the premises in question; and that the plaintiff, on the latter date, entered into another subcontract with the defendant Levin to do certain similar work in the south sun parlor of the same premises for an additional $72. It was admitted, also, that the Silvers, before the work began, paid to Levin $1,000; and that Levin still owed the plaintiff $435.

It is the theory of the Silvers (1) that the work was completed on July 26, 1922, and as the plaintiff did not serve a notice for mechanic's lien until October 24, 1922, it being more than sixty days (the statutory period) from the time of the completion of the work, the plaintiff was not entitled to recover; and (2) that as suit was not begun by the plaintiff until December 21, 1922, nearly four months (the statutory period) from the date of the completion of the work, the plaintiff cannot recover.

On the other hand, it is the theory of the plaintiff that the work was completed on August 30, 1922, and that, therefore, the notice for mechanic's lien of October 24, 1922, was within sixty days from the time of the completion of the work, and as this suit was begun on December 21, 1922, it was within the statutory period of four months.

This being a suit in the municipal court by a subcontractor against the original contractor and owner, it is evidently brought under section 28 of the Mechanics' Liens Act [Cahill's St. ch. 82, ¶ 28]. As held in *Voightmann & Co. v. Cross-Conklin Co.*, 183 Ill. App. 312, the only action on a subcontractor's claim for a mechanics' lien of which the municipal court of Chicago has jurisdiction is an action at law in assumpsit jointly against the owner and contractor under section 28 of that Act. It is provided in section 28 that a subcontractor may file his petition and enforce his lien as provided for in the Mechanics' Liens Act, but, also, that "he may sue the owner and contractor jointly for the amount due him in any court having jurisdiction of the amount claimed to be due, and a personal judgment may be rendered therein, as in other cases." That section further provides that, "such action at law shall be maintained against the owner only in case the plaintiff establishes his right to the lien." It further provides that, "all suits and actions by subcontractors shall be against both contractor and owner jointly.   *   *   *   Such judgments, where the lien is established shall be against both jointly,   *   *   *   but this shall not preclude a judgment against a contractor, personally, where the lien is defeated."

It, therefore, becomes important in the instant case, to determine at what time the work of the plaintiff was completed, whether by July 26 or not until August 30. As the Mechanics' Liens Act provides that the subcontractor shall within sixty days after

completing his work serve notice of his claim upon the owner, and shall within four months after the completion of the work institute suit, if the evidence proves that the work was finished by July 26, then it follows that the plaintiff was not entitled to a judgment against the owner under section 28, and will only be entitled to a judgment against the contractor Levin.

It is the testimony of Levin that after work was begun the contract was entirely changed, and that certain rooms were built larger than were provided for in the contract; that certain doors, bedrooms, closets and shelves, and certain electrical work, were all changed from what was provided for in the original contract, and that a large amount of extra work was done.

In the course of the work, apparently, when it was nearly all completed, on July 10, 1922, Levin, as contractor, gave to the defendants, Silvers, a contractor's statement, which was subscribed and sworn to before a notary public, to the effect that he, Levin, was the general contractor for all the remodeling work on the building in question; and "that all materials used and labor employed for said work are paid for in full." That document recited further that it was "made for the purpose of inducing Geo. and Tillie Silver to make a payment on account of above mentioned building." It then recites that the contract price was $4,385; that there were no extras; that he had been paid $4,150, and that there was a balance due him, Levin, of $235. Also, on the same date, Levin gave the Silvers a written waiver of lien "for all labor and materials for remodeling on building known as 7246 Coles avenue, George and Tillie Silver owners."

The defendant, George Silver, testified that on July 10, 1922, he met Levin on the street, and that Levin told him he needed some money; that he, Silver, told

Levin he would have to have a statement before he could pay out any more; that he and Levin then went to one Meister's office, and that Meister drew up the affidavit or contractor's statement, which Levin signed, but that Levin on that occasion said "he had a little extra work making some changes," and that he, Silver, then paid Levin $300. Levin testified that when he gave the waiver of lien, Silver gave him $300, and that he, Levin, told Silver at that time that he would owe the plaintiff $400; that Silver said there was plenty of money on the extra work to pay the plaintiff. Levin further testified that Silver owed him on July 10, 1922, about $1,700 for all the extra work. On cross-examination, Levin testified that he told Silver that he did not want to sign the waiver until the work was all finished, but that Silver's lawyer told him that it would have nothing to do with the extra work, that it was only a waiver for the amount of the contract. He further testified that when he told Silver that he, Levin, owed the plaintiff some money, and the plaintiff did not want to finish the work, that Silver said, "Let them go ahead and finish the work, and when we figure it up they will get their money"; that at that time the plaintiff was still working on the job; that the plaintiff started to complete the work because Silver said he would be responsible. Levin further testified that after July 10 he had a conversation with Silver in which Silver said, in the presence of Erickson, a member of the plaintiff firm, that if the plaintiff would finish up the work, he, Silver, would see that the plaintiff got its money; that Silver said, "All right, you go down and finish the work, and I will see that you get your money"; that Erickson told Silver that if that was the case, he would go down and finish it up. Levin further testified that, at the time he gave the waiver of lien, he told Silver that all the material and labor bills were paid, except the bill of the plaintiff.

Tillie Silver, one of the defendants, testified that she was present at a conversation on July 15, 1922, when Erickson, her husband, and Levin were present; that Erickson said he wanted some money, and Levin said he did not have any to pay him; that then Silver showed Erickson Levin's affidavit.

The testimony of Erickson is that he had a conversation with Silver on July 10; that no one else was present at the time, and he told Silver he was not getting any money, and wanted some on account of the job that the plaintiff was doing; that Levin was not giving it to him; that Silver said that he had nothing to do with that, that he, the witness, would have to see Levin about getting his money; that the plaintiff worked on the job until about July 15, when he had an appointment at the building to meet Levin about getting some money; that neither Levin nor Silver came; that he, the witness, then told the men to finish the day and then stop work; that Mrs. Silver telephoned his office about August 10 and asked him, the plaintiff, when he was going to finish the work; that he, the witness, said that the plaintiff had not received any money on the contract, and that the plaintiff would not be able to do the work until he got some money; that she then said that she had talked to Levin that morning, and he had promised to call the plaintiff, and have it finish the work; that he told her that Levin had not called him, and that he could not do anything until he got some money. Erickson further testified that another conversation took place on August 28, at Silver's residence, at which was present, also, Levin; that Levin and Silver had an argument about some matters pertaining to the work; that Silver called him, the witness, into a side bedroom and told him he would pay him the $72 that was an extra on the job aside from Mr. Levin's contract; that he, the witness, then said that

he could not do that very well; that he expected to get a substantial payment on the contract; that then he would go ahead and finish the entire job; that Silver said, "If you want to do that, I will pay you the $72 for that one job, and I will see that you get the money on the balance, if you will go ahead and finish the job; that the $72 was for plastering one room on the south side, and was not in Levin's contract"; that part of the plaintiff's original contract with Levin was unfinished, but was finished on August 29 or 30.

The defendant, George Silver, further testified that on July 20, Levin and Erickson were at his house; that Levin told him, the witness, that Erickson wanted some money, and that he, Levin, did not have it; that Levin said that Erickson had told him that if he did not get some money he would not finish the work; that the witness then said to Levin that he could not give Erickson any money for the plaintiff because he had paid Levin all that was coming to him, and said, "Here is the affidavit"; that that was the last time he spoke to Erickson, of the plaintiff firm, about any money; that he showed the statement to Erickson and told him that there was no more money coming to him.    On cross-examination, he testified that the plaintiff was doing the stucco work and the plastering; that they were there for some weeks, during which he met Erickson, of the plaintiff firm; that he knew the plaintiff was furnishing labor and material for the lathing and stuccoing; that he knew at the time that Levin made the affidavit that the plaintiff furnished the labor and material for the lath, plastering and stucco work.    Silver denied that Levin told him, when he gave him the contractor's statement, that all materials had been paid for, except the plaintiff, and that he still owed it in the neighborhood of $400.

He further testified that the plaintiffs were work-

ing on the job between the 10th and 26th of July, and that they went away on the 15th and came back a few days later; that the first time Erickson came to him for money was after he, the witness, had made final payment to Levin.

On July 26, 1922, the plaintiff wrote a letter to the defendant, George Silver, notifying him that there was a balance of $435.75 due on plaintiff's account for the work and material on the building in question; that the plaintiff had taken the matter up with Levin, but had had no response, and that "unless payment is made on or before Saturday, the 29th of July, we shall proceed to place mechanic's lien on building and take such other necessary action which we may see fit to enforce payment."

On September 9, 1922, the plaintiff, again, wrote to Silver that he had had a talk with Levin over the telephone in reference to the balance due the plaintiff, and that the only satisfaction he could get was that Levin was to see Silver the next day; that he, the witness, therefore, notified Silver that unless a settlement was made on or before Tuesday, September 5, a lien would be placed on the building without further notice to either Silver or Levin.

On October 24, 1922, the plaintiff served a mechanic's lien notice on the defendants, George and Tillie Silver, and that notice described the property in question and recited the amount due as $435.

From the foregoing it will be seen that the evidence as to when the work was finished is conflicting. It is significant, however, considering what the evidence shows as to the efforts which the plaintiff made to obtain payment either from Levin or from the Silvers, that the plaintiff did, on July 26, 1922, write a letter to the Silvers, stating that there was then due it the sum of $435.75, which is the amount for which the plaintiff subsequently filed its suit and that not only did it state in that letter that $435.75 was the amount

then due, but it further stated that having repeatedly taken the matter up with the contractor Levin, and receiving no response, it was placing the matter before the Silvers; and, further, in that letter, stated, "unless payment is made on or before Saturday, the 29th of July, we shall proceed to place mechanic's lien on building and take such other necessary action which we may see fit to enforce payment." In the face of that letter it is difficult to understand how the plaintiff may now reasonably claim that the work was not finished until August 30, 1922. It is true that the plaintiff offered in evidence time sheets of August 29 and 30, and that they are some evidence that some work was done on those days. We do not feel justified, however, in view of the testimony of the Silvers and the letter of the plaintiffs contradicting, as the letter does, the testimony of Erickson, in concluding that the evidence shows that the work was not finished on July 26, 1922. There being serious conflict in the evidence as to when the work was finished—that of Levin and Erickson (a member of the plaintiff firm) and the time sheets fixing it at August 30, and Silver and his wife, and the letter from the plaintiff dated July 26; and the trial judge, from all that appears to the contrary, fixing it at July 26—we do not feel that we are justified in holding that the work was not finished until August 30. Then, too, the trial judge saw and heard the witnesses and we did not.

As the Mechanics' Liens Act provides that the subcontractor shall within sixty days (section 24) after completing his work, serve a notice of claim upon the owner [Cahill's St. ch. 82, ¶ 24], and shall within four months (section 33) after the completion of the work, institute suit [Cahill's St. ch. 82, ¶ 33], it follows that the plaintiff having failed to prove that he had complied with the requirements of the act (as made necessary by section 28), the judgment of the trial

court being a judgment against the contractor alone (provided for by section 28), must stand.

The judgment will be affirmed.

*Affirmed.*

O'CONNOR, P. J., and THOMSON, J., concur.